UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ELLIS I. BLANKENSHIP, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>ALCOA, INC., )<br>    Defendant. ) | No. 3:03-CV-94<br>(Phillips) |

## MEMORANDUM AND ORDER

Plaintiff Ellis Blankenship, a 55-year old male, brings this action for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § *621 et* seq., and for reverse sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Defendant Alcoa, Inc., has moved for summary judgment with regard to both of plaintiff's causes of action on the grounds that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. For the reasons stated below, defendant's motion for summary judgment will be granted in part and denied in part.

### I. Background

The facts, taken in a light most favorable to plaintiff are as follows: Ellis Blankenship is a white male born on August 20, 1950. Blankenship was employed by defendant Alcoa in 1978. At the beginning of Blankenship's employment, he was a Job Grade 15, Unit Supervisor. Blankenship is currently employed by Alcoa at Job Grade 18.

Over the last several years, Blankenship alleges he has been discriminated against as a result of the development and application of Alcoa's policies and procedures to promote diversity advancement at Alcoa.

Sometime in 1996, Alcoa established the Line Leadership Assessment Program which was designed to develop a pool of qualified candidates for line leadership positions that might become available in the future. The first step in pursuing this process was for an employee to ask their current area manager to sponsor him. Once the employee's current area manager agreed to sponsor him, the employee had to submit an application. Once the application was submitted, the employee was required to participate in a one-day assessment. The assessment was not conducted regularly, but was conducted on an as needed basis. Blankenship first learned of the assessment program after he was denied a coordinator position in the Cleveland Plant.

After being advised that he would be required to have management sponsors in order to complete the assessment, Blankenship secured sponsorship and support for his coordinator assessment, yet he was denied the opportunity to complete the assessment for approximately four (4) years. Blankenship asserts that while waiting for the opportunity to complete the coordinator assessment, younger and less experienced employees were given the opportunity to complete the assessment and many subsequently advanced. In addition, during this time period, several younger employees were given more than one opportunity to complete the assessment. Blankenship was told by supervisors that he is

a "stopper" or "blocker," indicating that because of his job status, age and gender, he would not be allowed to move forward in the company.

Blankenship avers that Alcoa has continued to limit the frequency with which the assessment is given, limit the number of individuals who can complete the assessment, and limit the type of candidates who qualify to take the assessment, based on age and gender. Blankenship asserts that Alcoa has used the assessment and its completion to prevent promotion of older employees, and to suppress salaries of older employees, including the plaintiff, who perform the basic job functions of coordinators, but who are not given the same title, responsibilities or benefits. Alcoa's development and use of the assessment program with regard to Blankenship and others similarly situated, in effect and/or in purpose, denies advancement based on age. In addition, Alcoa developed a Mentoring Program whereby predominantly female and younger male employees were allowed upper-level management mentors without the same being offered to Blankenship and others similarly situated.

In 1999, Blankenship was allowed to take the coordinator assessment and received a high grade. Subsequent to completing his assessment, Blankenship applied for a Grade Level 19 position and was not given an interview. A 30-year old male was given the job and Blankenship was told by the supervisor that the supervisor had forgotten to look at Blankenship's resume and had forgotten that he had applied for the position.

Later in 1999, Blankenship was promoted to Grade 17, Area Coordinator. However, despite the increase in job grade level, Blankenship contends the position produced a greater work load without corresponding benefits and responsibilities. There were no additional employees reporting to him, he was relegated to a field office, and he was, in all respects, treated as a supervisor and not as a coordinator. The increase in job grade came with only a nominal raise in pay.

Alcoa has an employee audit system in place whereby employees are evaluated by their supervisor. This system is a basis for promotion, pay raises, and standing within the company. Based on his performance, Blankenship accumulated high audit ratings within the Alcoa system. Blankenship alleges that Alcoa unilaterally decreased his audit rating to meet self-imposed quotas without relating such decreases to performance. Specifically, Blankenship alleges that his audit rating was reduced in favor of a younger female employee's elevation within Alcoa, even though his performance remained at the highest level. Alcoa's self-imposed quotas, as applied to the audit system, operated to assign evaluation on factors other than merit, and in particular, the audit system has been used to discriminate against Blankenship and others similarly situated, based on age.

In January 2002, Blankenship applied for two coordinator positions in the "Hot Line" area. The two positions were subsequently filled in February 2002 by younger male and female employees. Blankenship was promoted in October 2003, to Grade Level 18,

4

as a General Supervisor.  In September 2004, Blankenship received a lateral move to a position as North Ingot General Supervisor.

Blankenship alleges that Alcoa's policies and procedures, in particular, the Coordinator Assessment Program, Mentoring Program, and Audit System, although facially neutral, have adversely impacted the plaintiff and other middle-aged male employees, constituting disparate impact discrimination.  Blankenship timely filed a charge of discrimination with the Equal Employment Opportunity Commission on June 3, 2002.  The EEOC issued a notice of right to sue, and Blankenship timely filed this lawsuit.

Defendant Alcoa has moved for summary judgment with regard to both of Blankenship's causes of action on the grounds that there are no genuine issues of material fact and Alcoa is entitled to judgment as a matter of law.  Specifically, Alcoa asserts that Blankenship cannot establish a *prima facie* case of reverse sex discrimination under Title VII because he cannot show background circumstances that support the suspicion that Alcoa is the unusual employer who discriminates against the majority.  Secondly, Alcoa asserts that Blankenship cannot set forth a *prima facie* case of age discrimination because he cannot show that a younger individual was chosen over him for the Hot Line positions.  Finally, Alcoa asserts it can articulate legitimate, non-discriminatory reasons for its actions and Blankenship cannot show any evidence of pretext.

## II. Standard of Review

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

## III. Analysis

Blankenship has alleged violation of the ADEA and Title VII, setting forth allegations of age and reverse gender discrimination. Blankenship's claims can be narrowed to the following: Alcoa's failure to promote him in 2002 to two Hot Line positions

6

which were filled by a younger male and a younger female, his inability for several years to participate in the Line Leadership Assessment Program, and a decrease in his performance evaluation without cause.

As an initial matter, Alcoa asserts that any discrete incidents which occurred prior to July 2001, are untimely. Blankenship filed his charge of discrimination with the Tennessee Human Rights Commission (THRC) on May 2, 2002. Alcoa contends the only claims which could be actionable are those claims which occurred 300 days before Blankenship filed his THRC claim. Thus, only those actions taken by Alcoa after July 2001 (300 days prior to May 2, 2002) could the basis of any actionable discrimination claim.

In *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the United States Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. The Supreme Court specifically denied a failure to promote or denial of a transfer as a discrete act. *Id.* at 114. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate unlawful employment practice." *Id.* Accordingly, the court finds that any discrete events prior to July 2001 are untimely, and Blankenship's claim that prior to 1999, he was denied participation in the Line Leadership Assessment Program, and his claim that he suffered a decrease in his performance evaluation without cause sometime in 1998, will be dismissed as untimely.

As for plaintiff's disparate treatment claims, the only timely positions which Blankenship claims to have been denied are the positions in the Hot Line in January 2002, and the Finishing/ABS position for which he applied in March 2002.[1] The court will next address Blankenship's failure to promote claim for the two Hot Line positions in 2002.

Under either the ADEA or Title VII, the plaintiff establishes a *prima facie* case of discrimination by showing that (1) he is a member of a protected group, (2) he was the subject of an adverse employment decision, (3) he was qualified for the position, and (4) promotion of a person outside the protected group. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 357 (6th Cir. 2003).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). If the defendant meets this burden, the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext. *Id.* After the burden shifts, the plaintiff must come forward with evidence that the defendant's reason for the employment action is false. *Sutherland v. Michigan Dept. Of Treasury,* 344 F.3d 603, 615 (6th Cir. 2003). In reverse discrimination cases, the plaintiff satisfies the first prong of the analysis by demonstrating background circumstances to support the suspicion that the defendant is

---

[1] In his response to Alcoa's motion for summary judgment, Blankenship stated that he does not contest the Finshing/ABS position filled in March 2002. Therefore, summary judgment will be granted to Alcoa on this claim.

that unusual employer who discriminates against the majority. *Leadbetter v. Gilley,* 385 F.3d 683, 690 (6th Cir. 2004).

The record shows that in January 2002, the Hot Line area was reorganized. Rick Stone (age 40) received a lateral transfer from one Grade 19 position to another Grade 19 position as Hot Rolling Superintendent. Myra Hair was moved from Grade 18 to Grade 19 as the Ingot Prep Superintendent. Alcoa states that at the time, the current superintendent of the North Ingot division was planning to move to Warrick. Because Blankenship was considered one of the candidates for the North Ingot Superintendent position, he was not considered for the two positions in the Hot Line area. Alcoa asserts that Blankenship's age and/or sex had nothing to do with Alcoa's decision not to consider Blankenship for the Hot Line positions.

At the time the two Hot Line positions were filled, Blankenship was 51 years old, and, thus, a member of a protected class. Additionally, he applied for and was qualified for the promotions. Bret McBrayer, the Alcoa manager responsible for the Hot Line reorganization, testified that Blankenship was a viable candidate for both positions. However, Myra Hair, a 31-year old female, was named to one of the two positions, and Richard Stone, a 40-year old male was named to the other.

At the time of her promotion, Myra Hair had worked at Alcoa for less than five years. She had been promoted from Grade 15 to Grade 19 during that time period. Hair, at 31 years of age, was substantially younger than Blankenship at the time she was

9

promoted to the Hot Line Superintendent position. Rod Ray, Hair's supervisor, testified that Hair had been promoted without sponsorship, that she "wasn't ready" as she had not proven herself worthy in her performance, and that she was pushed along the promotion track.

Alcoa has offered a legitimate non-discriminatory reason for Hair's selection for the position over Blankenship – Blankenship was a candidate for the North Ingot Superintendent position, therefore, he was not given the Hot Line Superintendent position. McBayer testified he believed that Blankenship was a better fit and potentially a strong option for Alcoa in the North Ingot role. When Blankenship questioned the lack of consideration, he was offered the explanation that had been "penciled in" for the North Ingot position. However, once that job became vacant, it was filled by another individual, George Chapman.

Moreover, there was a directive from Joe Haniford, Alcoa's Director of Tennessee Operations, to promote and hire more women. Rod Ray, Blankenship's supervisor testified that diversity candidates had been pushed along too quickly and without proper training. Roy Dirkmaat, Blankenship's upper level supervisor testified that there had been candidates who were not capable, but were being promoted or suggested for positions when they did not necessarily have the experience or qualifications. Blankenship testified that all newly hired female employees were given mentors and that males were not. These circumstances create a material question of fact whether Alcoa's proffered

10

reason for not considering Blankenship for the Hot Line position given to Hair was a pretext for discrimination on the basis of age and/or sex.

As for the second Hot Line position which Richard Stone received, it is admitted that Blankenship was qualified for the position and that Stone, a significantly younger person, was chosen as Hot Rolling Superintendent. Alcoa argues that Stone was not promoted, he was laterally transferred. Therefore, Blankenship cannot show that a vacancy existed or that he was similarly situated to Stone, and he cannot establish a *prima facie* case of age discrimination. The court disagrees.

Blankenship testified that Dirkmaat, one of his upper level supervisors, told Blankenship that he was a "blocker" or "stopper." A "blocker" has been described as someone who cannot advance at Alcoa despite sponsorship. Blankenship testified that his annual performance review was lowered without a drop in performance and only as a result of the company having no career path for him. Rod Ray agreed that the company had made a concerted effort to ignore employees over 50 years of age.

Blankenship was over forty years old, and thus a member of the protected class. He also suffered an adverse employment action when Alcoa failed to consider him for the position of Hot Rolling Superintendent. There is no dispute that Blankenship was qualified for the position, but was never given an interview. Blankenship had completed the Line Assessment and had been recommended for the position by his supervisor, Roy

11

Dirkmaat. It is also undisputed that the position was filled by someone substantially younger than plaintiff (Blankenship was 51 years of age, Stone was 40 years of age).

As for the previous Hot Line position, Alcoa asserts that it did not consider Blankenship for the Hot Rolling Superintendent position because he was "penciled in" for the North Ingot Superintendent position. However, when that job became vacant, it was filled by another individual. Again, the circumstances create a material question of fact whether Alcoa's proffered reason for not promoting Blankenship was a pretext for discrimination on the basis of age.

Blankenship was presented evidence which establishes a question of fact regarding Alcoa's motivation for failing to consider him for the two Hot Line positions in January 2002, which were filled by a younger female and a younger male. Since the trial court is not to resolve issues of fact in deciding a motion for summary judgment, the determination of whether the facts presented by Blankenship give rise to an inference of discrimination must be left to the jury. It is not the province of the summary judgment court itself to decide what inferences should be drawn." *Mason,* 942 S.W.2d at 473. At this juncture in the proceedings, Blankenship has presented more than a scintilla of evidence to support his claim that sex and/or age discrimination may have motivated Alcoa's decision not to consider him for the Hot Line positions in January 2002. *Street v. J.C. Bradford Co.*, 886 F.2d 1472 (6th Cir. 1989); *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991); *White v. Federal Exp. Corp.*, 729 F. Supp. 1536, 1553 (E.D. Va. 1990). Therefore, summary judgment is not appropriate.

## Conclusion

For the reasons stated above, defendant Alcoa, Inc.,'s motion for summary judgment [Doc. 20] is **GRANTED IN PART AND DENIED IN PART**; the motion is **GRANTED** as to Blankenship's claims of age and/or sex discrimination which occurred prior to July 2001, and as to his claim for failure to promote to the Finishing/ABS position in March 2002. The motion is **DENIED** as to Blankenship's claims for failure to promote to the Hot Line positions in January 2002. The parties will prepare the case for trial.

**IT IS SO ORDERED.**

ENTER:

        s/ Thomas W. Phillips
United States District Judge